UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

HOWARD S.,[1]

        Plaintiff,

   v.                                                    21-CV-06437-LJV
                                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

─────────────────────────────────

On June 10, 2021, the plaintiff, Howard S. ("Howard"), brought this action under

the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2]  *Id.*  On March 21, 2022, Howard moved for judgment on the pleadings,

Docket Item 6; on August 18, 2022, the Commissioner responded and cross-moved for

judgment on the pleadings, Docket Item 9; and on September 29, 2022, Howard replied,

Docket Item 10.

───────────────────

[1] To protect the privacy interests of Social Security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov.
18, 2020).

[2] Howard applied for both Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI").  One category of persons eligible for DIB includes any adult
with a disability who, based on his quarters of qualifying work, meets the Act's insured-
status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d
Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also
demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive
both DIB and SSI, and the Social Security Administration uses the same five-step
evaluation process to determine eligibility for both programs.  *See* 20 C.F.R.
§§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Howard's motion and grants the Commissioner's cross-motion.[3]

## <u>STANDARD OF REVIEW</u>

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.    **THE ALJ'S DECISION**

On February 10, 2021, the ALJ found that Howard had not been under a disability since his alleged disability onset date of October 1, 2014.  *See* Docket Item 5 at 507-18.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), 416.920(a).  *See id.*

At step one, the ALJ found that Howard met the insured status requirements of the Act through December 31, 2018, and that Howard had not engaged in substantial gainful activity since October 1, 2014.  *Id.* at 509.  At step two, the ALJ found that Howard suffered from two severe, medically determinable impairments: degenerative disc disease of the lumbar spine and obesity.  *Id.* at 510.

At step three, the ALJ found that Howard's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 511-12.  More specifically, the ALJ found that Howard's impairments did not meet or medically equal listing 1.04 (disorders of the spine).  *Id.* at 511.  The ALJ then found that Howard had the residual functional capacity

("RFC")[4] to perform the full range of "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Howard could reach frequently and that he could stoop, crouch, crawl, kneel, climb stairs, and balance only occasionally.  *See id.* at 512-16.

At step four, the ALJ found that Howard had no past relevant work.  *Id.* at 516. But given Howard's age, education, and RFC, the ALJ found at step five that Howard could perform substantial gainful activity as a housekeeping cleaner or a routing clerk. *Id.* at 517; *see Dictionary of Occupational Titles* 323.687-014, 1991 WL 672783 (Jan. 1, 2016); *id.* at 222.687-022, 1991 WL 672133.  The ALJ also found that Howard could perform substantial gainful activity as an usher or furniture rental consultant if he were limited to only occasional bilateral reaching.  Docket Item 5 at 517; *see Dictionary of Occupational Titles* 344.677-014, 1991 WL 672865 (Jan. 1, 2016); *id.* at 295.357-018, 1991 WL 672589.   Therefore, the ALJ found that Howard had not been under a disability or entitled to SSI or DIB between October 1, 2014, and February 10, 2021. *See* Docket Item 5 at 518.

## II.   ALLEGATIONS

Howard argues that the ALJ erred by failing to develop the record.  *See* Docket Item 6-1 at 15-20.  More specifically, he faults the ALJ for not obtaining orthopedic treatment notes from Chibuikem Akamnonu, M.D.  *See id.*  For the reasons that follow, this Court disagrees.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

### III.    ANALYSIS

### A.    ALJ's Duty to Develop the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1983) (internal quotation marks omitted); *see also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (summary order) (holding that an ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (internal quotation marks and citation omitted)).

Here, there are no evidentiary gaps in Howard's treatment records. Howard suggests that there should be orthopedic treatment records, including records from Dr. Akamnonu, also known as "Dr. Chibu." *See* Docket Item 6-1 at 15. But even if that is so, Howard's argument misses the mark.

"Dr. Chibu" first appears in Howard's medical records in a treatment note written by Edward Zgleszewski, M.D., at Clyde Family Health Center ("Clyde") on November 5, 2019. *See* Docket Item 5 at 778. In that note, Dr. Zgleszewski stated that Howard was "currently waiting to hear from orthopedics with Dr. Chibu, [and he] believes it has been [a few] months [since he] last spoke to their office about this." *Id.* A few months later, on April 7, 2020, Dr. Zgleszewski noted that Howard "[f]ollows Dr. Chibu and [is] trying to get an MRI for his lower back." *Id.* at 775. On August 12, 2020, Christine Gray, ANP, also of Clyde, noted that Howard had "[s]een orthopedic and is scheduled to go for an

5

MRI." *Id.* at 772.  And finally, on August 14, 2020, Howard underwent an MRI based on a referral from "Chibuikem Akamnonu, [M.D.]."  *See id.* at 813.  That MRI found "[m]ultilevel degenerative disc changes [that were] fairly mild[,] [as well as] a right lateral disc herniation at L4-L with moderate right L4-L5 foraminal narrowing[,] which account[ed] for [Howard's] right leg numbness."  *Id.*

So the record suggests that Howard saw Dr. Akamnonu once or twice and was referred for an MRI.  *See id.* at 772, 775, 778, 813.  Even under the old treating physician rule, that would not establish an examining relationship, let alone a treating relationship.  *See, e.g.*, *Norman v. Astrue*, 912 F. Supp. 2d 33, 81-82 (S.D.N.Y. 2012) ("A treating physician who has examined a claimant on one or two occasions is generally not considered a treating physician.") (also collecting cases); *see also* 20 C.F.R. §§ 404.1502, 416.902 (2011) ("We may consider an acceptable medical source who has treated or evaluated you a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).").

What is more, during the administrative hearing, Howard's counsel told the ALJ that "we cast a wide net for the orthopedics and rehab [records], but those are actually are in the prior records, so I [do not] think that [we are] waiting on those [records] at this time."  Docket Item 5 at 531.  The ALJ explicitly asked whether Howard was "asking [him] to develop any other evidence at this juncture," and Howard's counsel replied "[n]o."  *Id.*  Absent a showing of coercion or deception, an attorney's conduct is imputed to the claimant, *see Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010), and the ALJ was permitted to rely on counsel's statements that there were no other records

outstanding, *see, e.g.*, *Miller v. Berryhill*, 2019 WL 2205048, at *5 (W.D.N.Y. May 22, 2019); *see also Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (summary order).

Furthermore, if Howard and Dr. Akamnonu actually had a treating relationship that was more robust than the records suggest, Howard's current counsel could have submitted those records so that this Court could determine whether they might alter the ALJ's decision.  Because Howard's counsel has not done so, Howard's "speculation that th[ose] additional records exist or could be obtained is not a sufficient basis upon which to warrant remand."  *See Kaitlynn K. v. Comm'r of Soc. Sec.*, 2023 WL 2165179, at *5 (W.D.N.Y. Feb. 22, 2023) (also collecting cases); *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (summary order) ("The appellant urges that three missing records may exist that bear on Dr. Gomez's 'moderately limited' opinion.  But that theoretical possibility does not establish that the ALJ failed to develop a complete record."); *Aman v. Colvin*, 46 F. Supp. 3d 220, 225 n.2 (W.D.N.Y. 2014) ("[I]t appears that the Commissioner obtained all that there was to obtain, and plaintiff's contentions that more records existed, or that such records, if they did exist, would have supported her claim of disability, are wholly speculative."); *see also Johnson v. Colvin*, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014) ("Since Plaintiff is represented by counsel, the Court presumes that if evidence in support of the memorandum's conclusory arguments were to be found, counsel would have cited to it.").

Finally, Howard's argument that the absence of any orthopedic records renders the ALJ's decision suspect is belied by the three orthopedic exams done by acceptable medical sources—William Kingston, M.D., Rajeev Patel, M.D., and Elke Lorensen, M.D.

*See* Docket Item 5 at 347-50, 462-68, 474-75.  All three of those exams had largely normal results, *see id.* at 350, 464, 474-75, with Dr. Lorensen opining that Howard had moderate limitations in bending, lifting, reaching, and squatting, *id.* at 350.  Especially because the ALJ credited those findings and incorporated them into the RFC, *see* Docket Item 5 at 512-15, there were more than enough orthopedic records to support the ALJ's fundings.

In sum, the ALJ did not fail in his duty to develop the record.  And for all the reasons stated above, Howard's argument to the contrary is misplaced.

### B.      ALJ's RFC Determination

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order).  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Although he does not say so explicitly, Howard seems to raise several stock arguments regarding the ALJ's RFC determination; for example, Howard says that the ALJ "played doctor" and "cherry picked" evidence.  *See* Docket Item 6-1 at 18-19.  But it is not up to the Court to flesh out argument that are little more than buzz words taken from the caselaw.  On the contrary, it is Howard's duty to prove a more restrictive RFC than the one contemplated by the ALJ*, see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order), and he has not done that.

Howard also says that

> the ALJ in this case took it upon himself to interpret findings, such as the MRI's [*sic*] or testing, to interpret the severity.  However, providers have supported the clinical and radiological findings account[ing] for and support[ing] [Howard's] complaints and symptoms.  (Tr. 470, 808, 764).  While [Howard's] 'NCV' test was normal, this test is not always as helpful as an EMG, which [Howard] could not undergo due to his needle phobia.  It [is] unclear what benefit this test had in assessing [Howard's] issues in comparison to an EMG.

*See* Docket Item 6-1 at 18 (footnote omitted).  But that argument actually does what Howard accuses the ALJ of doing: it "play[s] doctor," *see id.*, by opining about the value of NCV and EMG tests.  And just as it is not within the province of the ALJ or the Court to opine on such matters, so counsel's musings unsupported by medical review lack any merit.

Howard's assertions about the RFC boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence of consider *de novo* whether [Howard] is disabled."  *See Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) (summary order) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial

evidence as a legal argument in order to garner a more favorable standard of review."). Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta*, 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second-guess it.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Howard's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 9, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


        SO ORDERED.

Dated:        April 22, 2024
                Buffalo, New York


                                 */s/ Lawrence J. Vilardo*
                                LAWRENCE J. VILARDO
                                UNITED STATES DISTRICT JUDGE

10